**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| SHANIKA WILLIAMS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 1:23-CV-00941 |
| v. ) | |
| ) | |
| AMY OLIVA, TIMOTHY BRYNER, ) | Judge Edmond E. Chang |
| NICOLE MAKI, ANITA HANNA, ) | |
| THERESA PLASCENCIA, and BOARD ) | |
| OF EDUCATION OF WAUKEGAN, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Shanika Williams brings this civil-rights lawsuit asserting substantive due process violations during the arrest and investigation of her 16-year-old son, M.W., at a public high school in Waukegan, Illinois. R. 14, First Am. Compl. Williams also asserts state law claims for intentional infliction of emotional distress and willful and wanton misconduct. *Id.*[1] Williams sued three police officers, the City of Waukegan, the Waukegan School District's educational-safety specialist Amy Oliva, superintendent Theresa Plascensia, assistant principal Nicole Maki, co-principal Timothy Bryner, the Board of Education of the District, and board member Anita Hanna. *Id.*[2]

---

[1] The Court has federal-question subject matter jurisdiction over the § 1983 claims under 28 U.S.C. § 1331, and supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

[2] The Plaintiff filed the First Amended Complaint with leave from this Court to remove one Defendant (Avelira Rodriguez Gonzalez) and add four Defendants (Amy Oliva, Timothy Bryner, Nicole Maki, and Theresa Plascencia) from the original complaint after conferring with defense counsel. R. 2, Compl.; R. 12, Pl.'s Mot.; R. 13, Minute Entry 4/26/2023.

Williams has settled her claims with the police officers and the City. R. 31, Minute Entry 8/22/2023. Hanna and the remaining District Defendants each moved to dismiss the First Amended Complaint. R. 19, Hanna's Mot.; R. 26, District Defs.' Mot.[3] Both motions are granted on the federal claims, and the Court intends to relinquish jurisdiction over the state claims if the federal claims are not successfully repleaded. The dismissal of the federal claims is without prejudice, and Williams may file an amended complaint by October 16, 2024, if she believes that she can fix the defects in the First Amended Complaint.

## I. Background

In deciding a motion to dismiss, the Court accepts well-pleaded facts as true and draws all reasonable inferences in the plaintiff's favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). On February 4, 2022, there was a shooting at a Dollar General store in Waukegan, Illinois. First Am. Compl. ¶ 21. Almost two weeks later, Waukegan police officers arrested M.W. while he was in class at Waukegan High School (the Brookside campus). *See id.* ¶ 25. Williams was not contacted when her son was arrested. *Id.* ¶ 29. After his arrest, M.W. was not advised of his *Miranda* rights and was induced into falsely confessing that he was the shooter. *Id.* ¶¶ 30–37. M.W. was held in custody for two nights. *Id.* ¶ 41. While M.W was in custody, the investigation continued: the officers received alibis proving M.W.'s innocence and identified a different shooter. *Id.* ¶¶ 39,

---

[3]For convenience, and following the naming conventions of the parties in their briefs, this decision refers to Amy Oliva, Theresa Plascencia, Nicole Maki, Timothy Bryner, and the Board of Education as the "District Defendants."

40. After M.W. was released from custody, an "unsupervised meeting" took place on school grounds between M.W. and Rayon Edwards, a man with "a violent criminal history," who "gave an unsolicited offer of 'protection' to M.W." during the meeting *Id.* ¶¶ 44, 45. Williams and M.W.'s counsel did not receive notice of this meeting. *Id.* ¶ 45.

Williams brings, variously,[4] claims for state-created danger (under the substantive due process clause), failure to intervene, intentional infliction of emotional distress, and willful and wanton misconduct against the District Defendants for: allowing M.W.'s arrest, failing to notify Williams about the arrest, failing to intervene on M.W.'s behalf when they knew or reasonably should have known M.W.'s exculpatory location at the time of the shooting, allowing the meeting with Edwards to take place, and failing to notify M.W.'s counsel about the meeting with Edwards. First Am. Compl. (Counts 19–21, 24–34, 36). Against Hanna, the school board member, Williams brings (1) federal claims for state-created danger for allowing the meeting with Edwards to take place, failing to intervene on M.W's behalf when she knew or reasonably should have known M.W.'s location at the time of the shooting, and failing to inform Williams of M.W.'s arrest; and (2) an intentional infliction of emotional distress claim for allowing the meeting with Edwards to take place and failing to notify M.W's counsel of the meeting. *Id.* (Counts 22, 23). Williams sues all the Defendants

---

[4]Williams asserts a different combination of the facts and legal claims listed here against each of the District Defendants, but both Williams and the District Defendants group all the District Defendants together when discussing these claims in their briefs.

3

except the Board in their individual and official capacities on both the state and federal claims.

## II. Standard of Review

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (cleaned up).[5] The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). A "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. And the allegations that are entitled to the

---

[5]*See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

assumption of truth are those that are factual, rather than mere conclusions. *Iqbal*, 556 U.S. at 678–79.

### III. Analysis

The District Defendants and Hanna each moved to dismiss all of Williams' claims. District Defs.' Mot.; Hanna's Mot. As discussed above, Williams brings a different combination of federal and state claims against each Defendant. *See* First Am. Compl. Williams filed one response to both motions and generally does not make arguments specific to each Defendant. *See* Pl.'s Resp.

#### A. State-Created Danger

Williams claims that Hanna, Oliva, Maki, and Bryner violated M.W.'s substantive due process rights under a § 1983 state-created danger theory. First Am. Compl. (Counts 19, 23, 28, 31). The Due Process Clause of the Fourteenth Amendment generally does not impose a duty on the state to protect individuals from harm by private actors or other state actors. *DeShaney v. Winnebago Cnty. Dep't of Soc. Services*, 489 U.S. 189, 195–96 (1989). There are two exceptions to this general rule: (1) the state has a duty "to protect individuals with whom it has a 'special relationship' by virtue of the state's custody over the individual," *King ex rel. King v. East St. Louis Sch. Dist. 189*, 496 F.3d 812, 817 (7th Cir. 2007) (quoting *DeShaney*, 489 U.S. at 199–200); and (2) the state has a duty "when the state affirmatively places a particular individual in a position of danger the individual would not otherwise have faced," *Monfils v. Taylor*, 165 F.3d 511, 516 (7th Cir. 1998) (cleaned up). *See also King ex rel. King*, 496 F.3d at 817 ("[T]he substantive component of the Due Process Clause imposes upon

5

the state a duty to protect individuals against dangers the state itself creates under the state-created danger doctrine."). To state a claim, Williams must adequately allege that "(1) the [defendants], by [their] affirmative acts, created or increased a danger that [the plaintiff] faced; (2) the [defendants'] failure to protect [the plaintiff] from danger was the proximate cause of [the plaintiff's] injuries; and (3) the [defendants'] failure to protect [the plaintiff] shocks the conscience." *Jackson v. Indian Prairie Sch. Dist. 204*, 653 F.3d 647, 654 (7th Cir. 2011).

### 1. Arrest on School Grounds

Williams alleges that Hanna, Oliva, Maki, and Bryner affirmatively acted when they allowed the police to arrest M.W., failed to notify Williams of the arrest as required by Illinois state law, 105 ILCS 5/22-88(b), and failed to notify the police of M.W.'s location at the time of the shooting (which exculpated him). First Am. Compl. (Counts 19, 23, 28, 31). These allegations do not adequately state a § 1983 claim for state-created danger. First, it is doubtful whether "allowing" the police to arrest an individual qualifies as an affirmative act—Williams' framing of this event as "remov[ing] M.W. from class" and "turning him over to the Detectives" does not adequately explain how school administrators were supposed to resist the police's authority to make an arrest. Pl.'s Resp. at 5–6. Second, the Defendants' actions were not the proximate cause of the danger—that is, the danger arising from holding M.W. in custody and inducing his confession, despite his innocence—even if the Defendants knew or "reasonably should have known" about M.W.'s whereabouts at the time of the shooting, as Williams alleges. It is reasonable for school employees to assume that

6

police have probable cause when arresting individuals and will conduct their investigations in accordance with the law, even if the school employees had information relevant to the investigation. If there were violations of M.W.'s constitutional rights by the police and the City once he was arrested, then Hanna and the District Defendants' actions in allowing the arrest on school grounds did not proximately cause them.

Finally, the Defendants' actions, as currently alleged, do not "shock the conscience." Conduct shocks the conscience when it is "arbitrary in the constitutional sense." *See County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998) (cleaned up). This standard "lacks precise measurement," *King ex rel. King*, 496 F.3d at 818, but is measured on the "tort law's spectrum of culpability." *Lewis*, 523 U.S. at 848. The set of circumstances under which the state actor acts is crucial:

> Only conduct falling toward the more culpable end of the of the spectrum shall be found to shock the conscience. Thus, when the circumstances permit public officials the opportunity for reasoned deliberation in their decisions, we shall find the official's conduct conscience shocking when it evinces a deliberate indifference to the rights of the individual. On the other hand, where circumstances call for hurried judgments in order to protect the public safety or maintain the public order, and thereby render reasoned deliberation impractical, conduct must reach a higher standard of culpability approaching malicious or intentional infliction of injury before we shall deem official conduct conscience shocking.

*King ex rel. King*, 496 F.3d at 819 (citing *Lewis*, 523 U.S. at 849, 851–53; *Armstrong v. Squadrito*, 152 F.3d 564, 576–77 (7th Cir. 1998)). Allowing an arrest for a shooting is an example of circumstances that "call for hurried judgments in order to protect the public safety" on the part of school employees. *King ex rel. King*, 496 F.3d at 819. Moreover, the Illinois state law cited by Williams requiring parental notifications of

7

student arrests has an explicit exception that it "does not limit the authority of a law enforcement officer to make an arrest on school grounds" and it "does not apply to circumstances that would cause a reasonable person to believe that urgent and immediate action is necessary." 105 ILCS 5/22-88(c).[6] Those exceptions apply here. Although Williams points out that M.W. was in custody for 36 to 48 hours, meaning that there was some time for the school employees to take action after the hurried event of the arrest, the Defendants' alleged inaction on its alleged knowledge of M.W.'s innocence does not state a claim for culpability reaching "malicious or intentional infliction of injury," *King ex rel. King*, 496 F.3d at 819, because it was the *police*'s responsibility, and not the school's, to ensure the proper investigation of M.W. This is especially true given that the complaint does not outright allege actual knowledge of M.W.'s innocence on the part of the Defendants, which would be required to state a claim for action intended to cause harm.

### 2. Meeting with Edwards on School Grounds

Williams also alleges that Hanna, Maki, and Bryner affirmatively acted when they "permitted, encouraged, and/or otherwise facilitated an unsupervised meeting on school grounds between M.W. and a man with a violent criminal history, without a parent, guardian, or counsel for M.W. present," First. Am. Compl. (Counts 23, 28, 31), during which Edwards "gave an unsolicited offer of 'protection' to M.W." *Id.* ¶ 45. The First Amended Complaint does not include any further details about the meeting,

---

[6]And, as even Williams concedes, a violation of state law does not by itself necessarily state a Section 1983 claim for a violation of federal constitutional rights. *See Jones v. Cummings*, 998 F.3d 782, 788 (7th Cir. 2021); Pl.'s Resp. at 12. The state law at issue does not have its own private cause of action. *See* 105 ILCS 5/22-88.

including whether the police facilitated the meeting as part of their investigation, or which of the three Defendants were involved in the meeting and in what capacity. As for the danger M.W. experienced, Williams only alleges that he received an offer of "protection," set forth in presumably sarcastic quotation marks. *Id.* Those quotation marks are doing too much work if they are the basis to infer that M.W. was actually in danger because of his meeting with Edwards and, more importantly, that the Defendants *intentionally* created this danger. Just as for the arrest on school grounds, the allegations do not state a due process claim for state-created danger.

Even if Williams did state a claim of state-created danger for the meeting with Edwards, the Defendants are shielded from civil liability because of qualified immunity.[7] Under the doctrine of qualified immunity, § 1983 claims must be dismissed "unless (1) the plaintiffs adequately alleged facts that, if true, would constitute a violation of a statutory or constitutional right, and (2) the right was 'clearly established' at the time of the alleged violation, such that a reasonable public official would have known his conduct was unlawful." *Hanson v. LeVan*, 967 F.3d 584, 592 (7th Cir. 2020) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). A right is clearly established when it is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Kemp v. Liebel*, 877 F.3d 346, 351 (7th Cir. 2017) (cleaned up). Williams argues that the state-created danger theory in general

---

[7]Hanna does not specifically argue that the § 1983 claim against her should be dismissed because of qualified immunity. *See* R. 20, Hanna's Mem. But consistent with the group-based arguments presented by Williams, she only generally responds to the other arguments on qualified immunity and does not argue that qualified immunity should not apply to Hanna for her failure to raise it. Pl.'s Resp. at 9–10.

9

is a clearly established right, meaning that the Defendants are not shielded by qualified immunity. Pl.'s Resp. at 10 (citing *Monfils*, 165 F.3d 511; *Jackson*, 653 F.3d 647). But that is too high of a level of generality at which to assess qualified immunity: Williams must either cite a "clearly analogous case establishing the right to be free from the conduct at issue," or show that even without an analogous case, the Defendants' conduct was "so egregious that no reasonable person could have believed that it would not violate established rights." *Beaman v. Freesmeyer*, 776 F.3d 500, 508 (7th Cir. 2015) (cleaned up). Williams offers no precedent that facilitating or permitting a meeting on school grounds in these circumstances, at least as currently alleged, violates a clearly established constitutional right.[8] And without more details about the danger M.W. was in and the Defendants' role in creating that danger, the allegations about the meeting do not rise to the level of egregious conduct that the Defendants would have known was unconstitutional, even in absence of a precedential case on all fours with these facts.

### B. Failure to Intervene

Williams also asserts § 1983 failure-to-intervene claims against Oliva, Plascencia, Maki, Bryner, and the Board of Education because they did not notify the police about M.W.'s location at the time of the shooting when he was in custody (which exculpated him) and did not notify Williams about her son's arrest. "The Seventh Circuit has consistently recognized that a state actor's failure to intervene in the

---

[8]If anything, Williams concedes that state-created danger cases in the educational setting rarely move forward. Pl.'s Resp. at 10–11.

10

violation of another's constitutional rights may render him liable under Section 1983." *Patrick v. City of Chicago*, 213 F. Supp. 3d 1033, 1053 (N.D. Ill. 2016) (citing *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994); *Byrd v. Brishke*, 466 F.2d 6, 11 (7th Cir. 1972)).[9] *Yang v. Hardin* describes the constitutional obligation to intervene as follows:

> An officer who is present and fails to intervene to prevent other law enforcement officers from infringing the constitutional rights of citizens is liable under § 1983 if that officer had reason to know: (1) that excessive force was being used, (2) that a citizen has been unjustifiably arrested, or (3) that any constitutional violation has been committed by a law enforcement official; *and* the officer had a realistic opportunity to intervene to prevent the harm from occurring.

*Yang*, 37 F.3d at 285. Williams argues that the constitutional obligation to intervene extends to school employees, once again citing Illinois law on the obligation to notify parents about students' arrests (which does not say anything about school employees' duty to report exculpatory information to police during investigations of students). Pl.'s Resp. at 12. *Yang* and the cases it cites only address police officers' obligation to intervene. *Yang*, 37 F.3d at 285 (collecting cases).[10] And § 1983 cannot be used to

---

[9]The District Defendants argue that the concurring opinion in *Mwangangi v. Nielsen* puts into question the continuing viability of § 1983 failure to intervene claims. District Defs.' Mem. at 9; *Mwangangi*, 48 F.4th 816, 834 (7th Cir. 2022) (Easterbrook, J., concurring) (pointing out that "[s]everal decisions of this court say that police officers and prison guards must intervene when they see their colleagues acting improperly" but "[n]one of these decisions explains why this theory of liability is consistent with [*Ashcroft v. Iqbal*, 556 U.S. 662 (2009), *Vance v. Rumsfeld*, 701 F.3d 193 (2012)], and similar decisions"). Because these claims are dismissed, there is no need to address this broader question (and anyway circuit precedent is binding on this Court), except to note that § 1983's text also targets a defendant who "causes [a person] to be subjected" to the deprivation of a federal right.

[10]Although arguing for dismissal, the Defendants point out one district court decision where the court declined to hold as a matter of law that firefighters "cannot have a duty to

11

enforce state law on its own. *See Jones*, 998 F.3d at 788. Just as for the state-created danger claim, the arrest and investigation of M.W. was the police officers' remit and not the school employees'. Even police officers have a duty to intervene only when they have a "realistic opportunity" to change the course of the police conduct they are participating in, *Yang*, 37 F.3d at 285, in contrast to non-officer school employees who do not have the authority (or obligation) to intervene in a police investigation. The failure-to-intervene claims against Oliva, Plascencia, Maki, and Bryner are dismissed.

Relatedly but separately, the failure-to-intervene claim against the Board of Education requires a different analysis—but the result is the same. A municipality or local government cannot be liable under § 1983 unless the underlying constitutional deprivation is caused by a municipal policy, custom, or practice. *See Monell v. Dep't of Social Services of the City of New York*, 436 U.S. 658 (1978); *Flores v. City of South Bend*, 997 F.3d 725 (7th Cir. 2021). Williams does not allege that the Board of Education had any policy, custom, or practice relating to its employees' notification of police or parents when a student is arrested. *See* First Am. Compl. ¶¶ 247–52. This claim is dismissed.

---

intervene" because they are not law enforcement officers. *Ali v. Village of Tinley Park*, 79 F. Supp. 3d 772, 779 (N.D. Ill. 2015). At the pleading stage, the court held that the case was "unique in that the alleged wrong [one firefighter sprayed the plaintiff with a firehose while another watched] was perpetrated with a tool that the firefighters had special expertise in handling and with which firefighters are entrusted to promote public safety." *Id.* In contrast, here, the harmful conduct took place when M.W. was in police custody, and not when he was at school because of school employees' actions. *See* Pl.'s Resp. at 11–13.

12

### C. Official-Capacity Claims

Williams asserts her claims, under both state and federal law, against Hanna, Oliva, Plascencia, Maki, and Bryner in both their personal and official capacities.[11] Under § 1983, personal-capacity suits "impose personal liability upon a government official for actions he takes under color of state law." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). Official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Id.* (quoting *Monell*, 436 U.S. at 690 n.55). Williams brings a different set of claims against each of the individual defendants and the Board of Education, but by suing Hanna, Oliva, Plascencia, Maki, and Bryner also in their official capacities, she is effectively suing the Board of Education—their employer—as well. *See id.* And to adequately allege official-capacity claims against these Defendants, Williams must explain how the Board of Education's "'policy or custom' … played a part in the violation of federal law." *Graham*, 473 U.S. at 166 (quoting *Monell*, 436 U.S. at 694). The First Amended Complaint does not do so. All the federal claims are dismissed against all the Defendants regardless of this omission, as discussed above. The Court offers this guidance, however, if Williams tries to file an amended complaint.

### D. State Law Claims

Because Williams' federal claims are dismissed, albeit without prejudice and with leave to amend, the Court declines to address the state law claims at this time. *See* 28 U.S.C. § 1367(c)(3); *RWJ Mgmt. Co. v. BP Prods. N. Am., Inc.*, 672 F.3d 476,

---

[11]Because, as discussed below, the Court proposes to relinquish jurisdiction over the state law claims, only the federal law claims are addressed here.

13

478 (7th Cir. 2012) (explaining that "when federal claims drop out of the case," the trial court "has broad discretion to decide whether to ... relinquish supplemental jurisdiction over the state-law claims"—with a "general presumption in favor of relinquishment"). If Williams amends her complaint, and the Defendants move to dismiss, and if the motion on the federal claims is denied, then at that point the Court will address the state claims. If Williams amends her complaint, and the Defendants move to dismiss, and if the motion on the federal claims is granted with prejudice, then the Court will relinquish jurisdiction over the state claims. If Williams does not file an amended complaint, then this Court will relinquish jurisdiction over the state claims as asserted in the First Amended Complaint.

## IV. Conclusion

Williams' federal claims are dismissed without prejudice and with leave to amend. If Williams chooses to file an amended complaint, then it must be filed by October 16, 2024. If she does not file an amended complaint, then the dismissal of the federal claims will automatically convert to a dismissal with prejudice (and jurisdiction over the state law claims will be relinquished). The tracking status hearing of September 27, 2024, is reset to October 25, 2024, at 8:30 a.m., but to track the case only (no appearance is required).

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: September 25, 2024